JOSEPH F. RYAN vs. BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.    March 10, 1911. — June 19, 1911.    .

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, Street railway, Due care of plaintiff.    *Evidence*, Of supposed knowledge
to explain character of act.

In an action for personal injuries against a corporation operating a street railway,
it appeared that the plaintiff was employed by the defendant as a conductor,
that before starting on his first trip on the morning of the accident he had oc-
casion to see one of his superiors in the service at a car barn of the defendant,
that, although he saw a car not very far away approaching at a speed of about
two miles an hour on a track that he had to cross, he proceeded to walk along
a well-worn path used by the defendant's employees which led across the track
on which the car was approaching and, stepping on the track without looking,
was run down by the car and injured.    Between the plaintiff and the point at
which he saw the car approaching was what was called a " dead stop," at which
all passenger cars were stopped whether there were passengers to get on or off
there or not.    The plaintiff testified that, when he was receiving instructions as
to his duties as a conductor, he was told by his instructor that all cars stopped
at this place called the " dead stop," and that in this respect the plaintiff knew
no difference between the ·different kinds of cars.    It appeared that the car
which struck him was not a passenger car but a money car, which was used
for collecting receipts or other similar purposes.    The plaintiff testified that
when he saw the car he did not know what kind of a car it was, although he
had an idea that it was not a passenger car.    It appeared that if this car had
stopped at the " dead stop " and had started again it would not have reached the
place where the plaintiff crossed until a considerable time after he had passed
by.    *Held*, that it was a question of fact for the jury, whether the plaintiff ex-
ercised such care as persons of ordinary prudence would be expected to exer-    ·
cise, in relying upon his supposed knowledge that all cars approaching from
the place where he saw the car that afterwards struck him would stop before
reaching the place where he crossed.

In an action for personal injuries from being run down by a street car of the de-
fendant, the plaintiff may be asked by his counsel why he did not look before
stepping on the track in front of the car that injured him, his presumed answer
being a statement of his supposed knowledge that in accordance with a rule of
the street railway company this car like all other cars would stop at a " dead
stop " before reaching the place where he was crossing.

TORT for personal injuries received by the plaintiff, a con-
ductor on the street railway of the defendant, from being run
down by a car of the defendant while he was walking along a
path, worn by the employees of the defendant, on his way to the
defendant's car barn at its Reservoir station in Boston near the
boundary of Brookline.    Writ dated August 6, 1907.

In the Superior Court the case was tried before *Brown,* J. The material facts shown by the evidence are stated in the opinion. The defendant contended that there was no evidence of due care on the part of the plaintiff, and asked the judge to order a verdict for the defendant. The judge said, "It seems to me if this plaintiff had given the slightest glance as he came around the rear of that car, the accident would not have happened. He didn't give it because he assumed this was like passenger cars and would stop. I don't think that is an excuse. I think he should have looked."

The judge ordered a verdict for the defendant; and the plaintiff alleged exceptions. The exception to the exclusion by the judge of a question to the plaintiff is described sufficiently in the opinion.

*C. W. Bond,* (*W. W. Friend* with him,) for the plaintiff.

*R. A. Stewart,* for the defendant.

KNOWLTON, C. J.    The plaintiff was employed by the defendant as a conductor on its electric railway. Early in the morning of June 25, 1907, before the time for starting on his first trip, he had occasion to see one of his superior officers at the defendant's car barn near the Chestnut Hill reservoir. For that purpose, he was riding on an electric car on the outbound track toward Chestnut Hill and, as it approached the terminus of the railway near the car barn, he stepped off the car while it was moving slowly, and started, by a well-worn path, which was used by the defendant's employees, across the inbound track, towards the car barn. While crossing this track he was struck by another of the defendant's cars and injured.

There was evidence proper for the consideration of the jury tending to show negligence on the part of the defendant's servants in charge of this car.

The only difficult question in the case, is whether there was evidence that the plaintiff was in the exercise of due care. It is not suggested that there was any lack of care in stepping from the car on which he was riding before it came to a stop. He saw the car that struck him as it was approaching at a speed of about two miles an hour not very far away, and the contention is that he was negligent in not continuing to observe it or in not looking for it a second time before it struck him. On this part

of the case the evidence was uncontradicted, that between him and the place where he saw the car approaching, there was what is called a " dead stop." It was also an undisputed fact that all passenger cars were accustomed to stop at this place, whether there were passengers to get on or off there or not. The plaintiff testified that when he was receiving instructions as to his duties as conductor, he was told by his instructor that all cars stopped at this place called a " dead stop." He testified that, in this respect, he knew no difference between different kinds of cars. It appeared that the car that struck him was not a passenger car but was used for collecting receipts or other similar purposes. The plaintiff testified that when he saw it he did not know what kind of a car it was, although he had an idea that it was not a passenger car. If this car had stopped at the " dead stop " and started again it would not have reached the place where the plaintiff crossed until a considerable time after he had passed by. There was evidence that from eighty to one hundred conductors and motormen were employed on this part of the railway and, from this and other testimony in the case, the jury might have inferred that even if the plaintiff had known that money cars did not stop at this point the chances were not one in one hundred that an approaching car was one of this kind. The jury might have found from the evidence that the plaintiff thought it certain when he saw the car approaching, that it would stop before reaching the place where he crossed, and that there was no danger in crossing.

We are of opinion that it was a question of fact for the jury whether the plaintiff exercised such care as persons of ordinary prudence would be expected to exercise, in relying upon his supposed knowledge that all cars approaching from the place where he saw the car that afterwards struck him would stop before reaching the place where he crossed.

The question put to the plaintiff as to why he did not look before stepping upon the track was competent and the proposed testimony should have been admitted. *McCrohan* v. *Davison*, 187 Mass. 466. *Whitman* v. *Boston Elevated Railway*, 181 Mass. 138. Presumably he would have answered stating his supposed knowledge that this car like all other cars would stop before reaching the place where he was about to cross. But the jury might in-

fer this without an express statement from him. A majority of the court are of the opinion that the exceptions should be sustained.

$$\text{So ordered.}$$